MARC J. WINTHROP – State Bar No. 63218
mwinthrop@wcghlaw.com
GARRICK A. HOLLANDER – State Bar No. 166316
ghollander@wcghlaw.com
**WINTHROP COUCHOT**
**GOLUBOW HOLLANDER, LLP**
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

[Proposed] General Insolvency Counsel
for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>STYLES FOR LESS, INC., a California corporation<br><br>          Debtor and Debtor-in-Possession. | Case No. 8:17-bk-14396-MW<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S <u>EMERGENCY</u> MOTION FOR ORDER: (1) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIEN; AND (2) SETTING FINAL HEARING ON MOTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[DECLARATION OF AUGUST DEANGELO II IN SUPPORT THEREOF FILED CONCURRENTLY HEREWITH]**<br><br>[11 U.S.C. § 363]<br><br>DATE:    [To Be Set]<br>TIME:    [To Be Set]<br>PLACE:  Courtroom 6C<br>              411 West Fourth Street<br>              Santa Ana, CA 92701 |

230803

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ..........................................................................................................4

II.   STATEMENT OF FACTS ............................................................................................4

    A.    The Debtor .........................................................................................................4
    B.    Secured Claims ..................................................................................................5
    C.    Events Precipitating The Debtor's Financial Difficulties and Efforts to
         Reorganize. ........................................................................................................5
    D.    The Debtor's Proposed Use of Cash Collateral. ...............................................7

III.  THE NEED FOR EMERGENCY RELIEF ..................................................................8

IV.   THE SECURED CREDITORS DO NOT HAVE AN INTEREST IN
      REVENUES GENERATED FROM THE DEBTOR'S POST-PETITION
      SERVICES   ....................................................................................................................9

V.    THE DEBTOR SHOULD BE AUTHORIZED TO USE CASH
      COLLATERAL PURSUANT TO 11 U.S.C. § 363 ...................................................11

    A.    The Adequate Protection Burden. ...................................................................12
    B.    The Debtor Has Satisfied Their Adequate Protection Burden .......................13

        1. The Creditor's Asserted Interests are Further Protected by the
        Replacement Lien .............................................................................................13
        2. The Secured Creditors Are Adequately Protected by the
        Maintenance and Preservation of the Debtor's Business ...............................14

VI.   GOOD CAUSE EXISTS FOR HEARING THIS MOTION ON AN
      EMERGENCY BASIS ................................................................................................16

VII.  THE COURT SHOULD SCHEDULE A FINAL HEARING ON THIS
      MOTION AS SOON AS POSSIBLE IN ACCORDANCE WITH
      THE REQUIREMENTS OF THE BANKRUPTCY RULES ..................................17

VIII. CONCLUSION ............................................................................................................17

# **TABLE OF AUTHORITIES**

**PAGE**

**Cases**

Days California ...............................................................................................................................11

In re Bering Trader, Inc.
  944 F. 2d 500, 502 (9th Cir. 1991) .............................................................................................11

In re Big Hook Land & Cattle Co.
  81 B.R. 1001 (Bankr. D.Mont. 1988) ........................................................................................10

In re Cafeteria Operators
  299 B.R. 400, 405 (Bankr. N.D.Tex.2003).................................................................................9

In re Cann & Saul Steel Co.
  76 B.R. 479, 483 (E.D. Pa. 1987) ..............................................................................................15

In re Center Wholesale, Inc.
  759 F.2d 1440, 1449 n.21 (9th Cir. 1985) .................................................................................16

In re Days Inn California Riverside Limited Partnership
  27 F. 3d 374, 377 (9th Cir. 1994) ..............................................................................................11

In re Delbridge
  61 B.R. 484 (Bankr. E.D.Mich. 1986).......................................................................................10

In re Everett Home Town Limited
  146 B.R. 453 (Bankr. D. Ariz. 1992).........................................................................................11

In re Glasstream Boats, Inc.
  110 B.R. 611, 612 (M.D. Ga. 1990) ..........................................................................................15

In re Hamilton
  18 B.R. 868 (Bankr. Colo. 1982) ...............................................................................................10

In re Harrington & Richardson, Inc.
  48 B.R. 431 (Bankr. D.Mass. 1985) ..........................................................................................12

In re Hotel Sierra Vista Ltd. Partnership
  112 F.3d 429, 432 (9th Cir. 1997) .............................................................................................11

In re Karl A. Neise, Inc.
  16 B.R. 600, 602 (Bankr. S.D. Fla. 1981).................................................................................15

In re Kidsstop of America, Inc.
  64 B.R. 397, 401 (M.D. Fla. 1986) ...........................................................................................14

In re Martin
  761 F.2d 472 (8th Cir. 1985) .....................................................................................................14

In re McCombs Properties VI, Ltd.
  88 B.R. 261 (Bankr. C.D. Cal. 1988)..............................................................................12, 14, 15

In re McKim
  217 B.R. 97 (Bankr. D. R.I. 1998).............................................................................................11

In re Mellor
  734 F.2d 1396 (9th Cir. 1984) ...................................................................................................12

In re Pine Lake Village Apartment Co.
  16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982).................................................................................15

In re Skagit Pacific Corporation
  316 B.R. 330 (9th Cir. BAP 2004)...............................................................................................9

In re Stein
  19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) ..................................................................................15

In re Sullivan Ford Sales
  2 B.R. 350, 355 (Bankr. D.Me. 1980)........................................................................................16

In re Texas Tri-Collar, Inc.
  29 B.R. 724 (Bankr. W.D.La. 1983)......................................................................................9, 10

In re Timothy Dean Restaurant & Bar
  342 B.R. 1 (Bankr. D.C. 2006) ....................................................................................................9

In re Transp. Design & Technology, Inc.
  48 B.R. 635 (Bankr. S.D.Cal. 1985)..........................................................................................10

Ledgemore ............................................................................................................................... 13
United States v. Timbers of Inwood Forest
   484 U.S. 365, 108 S. Ct 626 (1988) ................................................................................. 12

**Statutes**

11 U.S.C. § 363 ........................................................................................................................ 9
11 U.S.C. § 363(c) .................................................................................................................. 16
11 U.S.C. § 363 (c)(2) ............................................................................................................ 11
11 U.S.C. § 363(c)(3) ............................................................................................................. 16
11 U.S.C. § 363(e) .............................................................................................................. 3, 12
11 U.S.C. § 506(a) .................................................................................................................. 14
11 U.S.C. § 506(c) .................................................................................................................... 9
11 U.S.C. § 522 ........................................................................................................................ 9
11 U.S.C. § 544 ........................................................................................................................ 9
11 U.S.C. § 546(b) ................................................................................................................... 9
11 U.S.C. § 547 ........................................................................................................................ 9
11 U.S.C. § 548 ........................................................................................................................ 9
11 U.S.C. § 552 ................................................................................................................. 10, 11
11 U.S.C. § 552(a) .................................................................................................................. 10
11 U.S.C. § 552(b) ............................................................................................................. 9, 10
11 U.S.C. § 1107(a) ................................................................................................................ 12

**Rules**

Rule 4001 of the Federal Rules of Bankruptcy Procedure ..................................................... 17

**Treatises**

Collier on Bankruptcy 15th Ed. Revised, ¶ 552.02[1] (1998) ................................................ 10

Pursuant to Rules 4001(b) and 9014 of the Federal Rules of Bankruptcy Procedure, Styles for Less, Inc., a California corporation, the debtor and debtor-in-possession herein (the "Debtor"), hereby moves ("Motion") this Court, on an emergency basis, for an order:  (i) authorizing the Debtor to use any cash collateral of any creditors who hold security interests against the Debtor's cash collateral ("Secured Creditors") and granting to each of the respective Secured Creditors a post-petition replacement lien as and for additional adequate protection of the Debtor's use of such cash collateral; and (ii) setting a final hearing on this Motion.

In order to prevent disruption to the Debtor's business operations, the Debtor respectfully request that the Court grant this Motion on an emergency basis.  The Debtor requires the immediate use of cash collateral (as that term is defined by Section 363 of the Bankruptcy Code), if any, of the Secured Creditors, to obtain funds necessary to maintain its operation.

By this Motion, the Debtor seeks an order authorizing the Debtor to use cash collateral pursuant to the terms of the operating budgets (the "Budget") attached as **Exhibit 1** to the Declaration of August DeAngelo II ("DeAngelo Declaration") filed concurrently herewith.  The Debtor seeks approval for use of cash collateral on the following terms:

1. The Debtor will be authorized to make expenditures during each four week period for three months not to exceed 115% of the aggregate amounts contained in the Budgets; any expenditure in excess of that amount will require the written approval of each of the relevant Secured Creditors, or further order of the Court after appropriate notice.  Budgets savings in any four week period may be carried over and used by the Debtor in subsequent periods.

2. The Debtor will grant to each of the respective Secured Creditors a replacement lien in the Debtor's post-petition cash and accounts receivable and the proceeds thereof, to the same extent, validity, and priority as any lien held by each respective Secured Creditor as of the petition date, to the extent cash collateral is actually used by the Debtor.

3. The Debtor reserves the right to seek, at the final hearing on this Motion, use of cash collateral on terms different from those contained in this Motion.

1   This Motion is based on the attached Memorandum of Points and Authorities and the
2   DeAngelo Declaration filed concurrently herewith, which establish that the Debtor has met its
3   burden under 11 U.S.C. § 363(e) to use cash collateral of each respective Secured Creditor, and,
4   accordingly, should be permitted to use the purported cash collateral.
5   WHEREFORE, the Debtor respectfully prays that the Court enter an order:
6       a.   Finding that each of the Secured Creditor's interests in cash collateral are
7   adequately protected for various reasons, including the existence of a substantial equity
8   cushion in the respective collateral;
9       b.   Authorizing, on an interim basis pending final hearing on notice to
10  creditors, the Debtor's immediate use of the cash collateral pursuant to the terms and
11  conditions in this Motion;
12      c.   Setting a final hearing on this Motion; and
13      d.   Granting to the Debtor such other and further relief as the Court may deem
14  just and proper.

15  DATED: November 7, 2017    **WINTHROP COUCHOT**
16                                                **GOLUBOW HOLLANDER, LLP**

18  By: */s/ Marc J. Winthrop*
       Marc J. Winthrop
19         Garrick A. Hollander
   [Proposed] General Insolvency Counsel for
20  Debtor and Debtor-in-Possession

-3-

230803

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The value of the collateral securing each of the Secured Creditors' claims continues to increase, as reflected in the Budget. Moreover, the Debtor's business strategy, which requires use of some cash collateral, as reflected in the attached exhibits, preserves the going concern value of the Debtor's business. Without the preservation of the Debtor's business as a going concern and consequential use of cash collateral, the Secured Creditors would recover a very small percentage of their claims, and unsecured creditors would be assured of receiving nothing in this case. Based on the foregoing, the Debtor submits that the Secured Creditors are adequately protected, and use of cash collateral is unquestionably in the best interest of the estate. The Debtor believes that its senior secured creditor supports and consents to the Debtor's use of the cash collateral.

## II.

## STATEMENT OF FACTS

### A. Description of the Debtor.

The Debtor is a California Corporation whose corporate offices are located at 1205 N. Miller Street, Anaheim, CA 92806. The Debtor, which was founded in 1992 by Michael P DeAngelo, operates approximately 93 retail women's clothing stores throughout California, Nevada, Arizona, Texas and Florida. The Debtor's clothing stores offer the hottest trendy clothing, shoes, accessories and more at discounted prices, and employs over 613 people at the store and corporate level.

### B. Secured Claims.

Wells Fargo Bank asserts a claim against the Debtor's estate in the amount of approximately $915,000, which it asserts is secured against all of the assets of the Debtor's estate. The Debtor is not aware of any other secured creditors holding claims against the cash collateral.

### C. Events Precipitating Chapter 11 Filing.

The Debtor has experienced financial difficulties over the last couple of years. These difficulties are due to a combination of factors, including, increased industry discounting, online

penetration, and shifts in consumer spending away from "fast fashion" and toward services and experiences. These changes have created a highly competitive retail environment and accelerated adverse trends in shopping habits. The result has placed severe pressure on the Debtor's cash flow, depriving the Debtor of the ability to timely pay obligations to its Landlords and vendors, resulting in lawsuits and numerous threats from creditors.

In order to address these issues, the Debtor has taken significant steps to restructure its business operations. The Debtor has implemented, in part, the following cost cutting measures: (1) closure of 55 brick and mortar locations; (2) significant reduction in corporate employees, field employees and consultants (approximately 311 employees in total); (3) salary reductions and salary eliminations to senior management; (4) closing of a satellite corporate office; (5) complete review and reduction of all expenses; and (6) pending negotiations of all existing brick and mortar leases.

Unfortunately, in light of the significant amount of debt that has amassed, the Debtor's cost reducing efforts alone are not sufficient to reorganize without bankruptcy protection. Consequently, in order to preserve the remaining stores and overall operation, on November 6, 2017, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**D.   The Debtor's Proposed Use of Cash Collateral.**

The Debtor proposes to use funds claimed as cash collateral by the Secured Creditors in connection with the continued operation of the Debtor's business, in accordance with the provisions of the Debtor's Budget attached as **Exhibit 1** to the DeAngelo Declaration. The Debtor proposes to use any cash collateral of each of the Secured Creditors pursuant to the terms and conditions set forth below:

1. Budget. The Debtor will be authorized to make the expenditures provided for in the Budget, and if necessary, to exceed the amounts set forth in the Budget by as much as 15% of budget total. Any expenditures in excess of this authorization will require the written approval of each respective Secured Creditor, or further order of the Court after appropriate notice. Budget savings in any month may be carried over and used by the Debtor in subsequent months (i.e., to account for changes in the timing of expenditures by

the Debtor).  After the expiration of the term of the Budget, the Debtor will be able to obtain use of any cash collateral of the Secured Creditors by filing and serving an amended budget; if no objection to the terms of such budget is filed within ten (10) days after the service of such budget, the budget will be deemed to have been approved.  If an objection is filed, such objection may be heard on shortened time, and the Debtor shall have authority to use cash collateral pending a ruling by this Court on such objection.

2. <u>Replacement Lien</u>.  As and for additional adequate protection of the Debtor's use of any cash collateral of the Secured Creditors, each of the Secured Creditors will be granted a replacement lien in the Debtor's post-petition cash, accounts receivable and inventory, and the proceeds of each of the foregoing, to the same extent and priority as any duly perfected and unavoidable liens in cash collateral held by such Secured Creditor as of the Petition Date, limited to the amount of any cash collateral of such Secured Creditor as of the Petition Date, to the extent that any cash collateral of such Secured Creditor is actually used by the Debtor.

3. <u>Reservation of Rights</u>.  The Debtor, the Committee and all other parties-in-interest will reserve any and all rights that they may have to object to the claims of any of the Secured Creditors and to object to the validity, priority and extent of the Secured Creditors' liens, if any, encumbering the Debtor's assets.

4. <u>Financial Reporting</u>.  The Debtor will provide to the Secured Creditors all monthly operating reports required to be submitted to the Office of the United States Trustee, and monthly cash flow reports, broken down by the expense line items contained in the Budget, within 15 days after the end of each monthly period after the Petition Date.

5. <u>Final Hearing on this Motion</u>.  The Debtor reserves the right to seek, at the final hearing on this Motion, use of cash collateral different from that set forth herein. Based upon the Budget set forth on **Exhibit 1**, the Debtor believes that this Court should authorize the Debtor's continued use of cash collateral in connection with its ongoing business operation.

**III.**

**THE NEED FOR EMERGENCY RELIEF**

The preservation of the value of the Debtor's estate and the success of this Chapter 11 case depends upon the Debtor's ability to sustain its operation. To do so, the Debtor must be able to meet, without interruption, its cash needs for post-petition purposes, fulfill its current customer orders, and pay other operational expenses incurred in the ordinary course of its business. Since the Debtor has been unable to secure financing, the use of cash collateral is critical to maximizing the return for the Debtor's creditors. Conversely, if the Debtor is not allowed to use cash collateral, the Debtor will be forced to liquidate its assets, resulting in much lower returns to the Debtor's creditors.

**IV.**

**THE DEBTOR SHOULD BE AUTHORIZED TO USE**

**CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363**

The provisions of 11 U.S.C. § 363(c)(2) govern a debtor's use of cash collateral. Section 363 (c)(2) provides, in pertinent part, as follows:

> The trustee [or debtor in possession] may not use, sell or lease cash collateral…. unless:
> (A)    each entity that has an interest in such cash collateral consents; or
> (B)    the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

Therefore, the Court may authorize use of a creditor's cash collateral in the absence of creditor consent. See, 11 U.S.C. § 363(e). A debtor-in-possession has all the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363 of the Bankruptcy Code. See, 11 U.S.C. § 1107(a).

Section 363(e) of the Bankruptcy Code provides that, upon the request of an entity that has an interest in property proposed to be used by the debtor, the court may prohibit or condition such use "as is necessary to provide adequate protection of such interest."

Therefore, this Court may authorize the Debtor's use of any cash collateral of Wells Fargo upon determining that the interest of Wells Fargo in any cash collateral will be adequately protected. In re McCombs Properties VI, Ltd., 88 B.R. 261 (Bankr. C.D. Cal. 1988).

### A. The Adequate Protection Burden.

To obtain court authorization to use cash collateral, a debtor must establish that the "interest" of creditors holding liens on the subject collateral will remain "adequately protected." 11 U.S.C. § 363(e). Pursuant to United States v. Timbers of Inwood Forest, 484 U.S. 365, 108 S. Ct 626 (1988), the "interest in property" entitled to adequate protection under 11 U.S.C. §363(e) is no more or less than the "value of the collateral" that is subject to the secured creditor's lien. Under this holding, a debtor is merely required to show that the secured creditor's collateral base will not be placed at risk. Timbers, 108 S. Ct at 633.

In addition to the foregoing, a debtor can make an adequate protection showing even where the collateral is declining, so long as the creditor's interest is protected by a reasonable equity cushion. See, In re Mellor, 734 F.2d 1396 (9th Cir. 1984); In re Harrington & Richardson, Inc., 48 B.R. 431 (Bankr. D.Mass. 1985); In re McCombs Properties VI, Ltd., 88 B.R. 261 (Bankr. C.D.Cal. 1988).

### B. The Debtor Has Satisfied its Adequate Protection Burden

#### 1. The Creditor's Asserted Interests are Further Protected by the Replacement Lien

Under the Debtor's cash collateral proposal, the Secured Creditors' interest in collateral will be further protected from a diminution in value through replacement liens granted to the Secured Creditors. Under the Debtor's proposal, each of the Secured Creditors will be granted, in accordance with their priority, a replacement lien, in the Debtor's post-petition cash and accounts receivable and the proceeds thereof, to the same extent, validity, and priority as any lien held by each respective Secured Creditor as of the Petition Date, to the extent cash collateral is actually used by the Debtor. For example, if Debtor uses $100,000 of pre-petition cash collateral, the relevant Secured Creditor will be granted a lien, to the extent of $100,000, in the proceeds of the cash collateral.

However, since the function of adequate protection is only to <u>preserve</u> and not to <u>increase</u> the collateral subject to a secured creditor's interest, any additional value created through the Debtor's use of the cash collateral, whether in the form of inventory, accounts receivable or cash, will <u>not</u> be subject to a replacement lien, but will instead constitute an asset of the estate that <u>all</u> creditors will ultimately be able to look for payment. <u>See</u>, <u>Ledgemore</u>, <u>supra</u>, 116 B.R. at 343 (so long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security interest, the creditor is adequately protected). Thus, each of the respective Secured Creditors' replacement liens should be limited to the amount of any cash collateral in existence as of the Petition Date.

Although the replacement lien will, in concept, ensure the preservation of the Secured Creditors' interests in the cash collateral, in reality, the liens will perform this function only if the Debtor, in fact, generates at least one dollar of value for every dollar of cash collateral expended. The evidence that addresses this issue is contained in the DeAngelo Declaration and specifically in the Budget, which is attached as **Exhibit 1** to the DeAngelo Declaration. The Budget indicates that the Debtor will operate on a cash flow positive basis during the budgeted period, and that its assets will increase in value during such period.

The Debtor believes that the projections of its business operations as set forth in the Budget are reasonable. The business assumptions underlying the operations projected in the Budget are essentially in accordance with the Debtor's historical experience, as adjusted to take into account recent or projected events (<u>e.g.</u>, the recent downturn in the economy). Accordingly, the Debtor believes that the budget establishes that the proposed replacement liens being granted to each of the Secured Creditors will adequately protect the Secured Creditors' alleged interests.

In summary, the DeAngelo Declaration provides evidence to establish with reasonable certainty that the Debtor's use of any cash collateral of the Secured Creditors

230803

will result in an increase in the estates' collateral pool, thereby adequately protecting each of the Secured Creditors' interests in any cash collateral.

### 2. The Secured Creditors Are Adequately Protected by the Maintenance and Preservation of the Debtor's Business

To determine the sufficiency of adequate protection, a bankruptcy court should: (1) establish the value of the secured creditor's interest; (2) identify the risk, if any, to the value of the secured creditor's cash collateral resulting from the debtor's request for the use of the cash collateral; and (3) determine whether the debtor's adequate protection proposal protects the value of the cash collateral as nearly as possible against risk to that value consistent with the concept of indubitable equivalence. McCombs, supra, 86 B.R. at 267 (quoting In re Martin, 761 F.2d 472 (8th Cir. 1985)).

To establish the value of a secured creditor's interest, the bankruptcy court must consider the purpose of the valuation, and the proposed disposition or use of the secured property. See, 11 U.S.C. § 506(a). "One of the primary factors to be considered in valuation is whether the subject property is to be used and retained by the debtor or whether the property is to be disposed of." In re Kidsstop of America, Inc., 64 B.R. 397, 401 (M.D. Fla. 1986).

Here, cash collateral consists of, among other things, the daily receipts generated by the operations of the Debtor's business. The value of any such cash collateral will depend, in large part, upon the preservation of the Debtor as a going concern. It follows that the risk to this going concern value of cash collateral (which risk is required to be identified by the Court in the McCombs test above) consists of any cessation in the Debtor's business operation. See, In re Glasstream Boats, Inc., 110 B.R. 611, 612 (M.D. Ga. 1990) (it was in the best interest of both the debtor-in-possession and the creditor that the debtor "continue in their operation as a manufacturing facility" and that "denial of this motion would result in another shut down of the assembly line, which the court doesn't feel is in the best interest of either party."). See also, In re Cann & Saul Steel Co., 76 B.R. 479, 483 (E.D. Pa. 1987) (continued operation of manufacturer debtor was in the best

interest of secured creditor in that it was likely that the secured creditor would realize more funds than it would by requiring the debtor to cease operations); In re Stein, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (the bankruptcy court allowed a debtor to use cash collateral where the secured party had no equity cushion for protection, finding that the use of the cash collateral was necessary to the continued operations of the debtor, and that the creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]"); In re Pine Lake Village Apartment Co., 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982) (debtor permitted to use cash collateral generated from rental income to preserve the value of real property which also secured creditor's claim); In re Karl A. Neise, Inc., 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien in post-petition property acquired by debtors; debtors can use cash collateral "in the normal operation of their business").

Here, even a temporary cessation of the Debtor's ability to operate its business, caused by any lack of access to any cash collateral, will result in a substantial diminution of the Secured Creditors' collateral, as customers will turn to competitors of the Debtor's for their retail needs, resulting in a liquidation of the Debtor's business. In contrast, as shown in the Budget, Debtor's ongoing operation will preserve the value of the Secured Creditors' interests in any cash collateral, thus providing adequate protection.

## V.

## GOOD CAUSE EXISTS FOR HEARING THIS MOTION ON AN EMERGENCY BASIS

In recognition of the fact that Section 363(c) of the Bankruptcy Code operates to deprive a debtor of the use of critical operating capital as of the filing of the debtor's Chapter 11 petition, Congress specifically provided in Section 363(c)(3) that a hearing on cash collateral "shall be scheduled in accordance with the needs of the debtor." Accordingly, the Bankruptcy Code expressly anticipates and authorizes expedited hearings on the issue of cash collateral use. See, 11 U.S.C. § 363(c)(3).

-11-

Similarly, the Ninth Circuit Court of Appeals has recognized that immediate interim relief may be crucial to the success of a corporate reorganization:

> We realize that 'in certain circumstances, the entire reorganization effort may be thwarted if emergency leave is withheld' and that reorganization under the Bankruptcy Code 'is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations.' It is for this reason that Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the debtor.'

In re Center Wholesale, Inc., 759 F.2d 1440, 1449 n.21 (9th Cir. 1985) (emphasis added) (citations omitted). See also, In re Sullivan Ford Sales, 2 B.R. 350, 355 (Bankr. D.Me. 1980).

In this case, the Debtor needs immediate use of cash collateral in order to meet the daily costs and expenses of operating its business in order to preserve the value of its assets. Use of cash collateral is critical to maintaining the Debtor's operation and to maximizing the return for the Debtor's creditors. Accordingly, good cause exists to hear this Motion on an emergency basis.

## VI.
## THE COURT SHOULD SCHEDULE A FINAL HEARING ON THIS MOTION AS SOON AS POSSIBLE IN ACCORDANCE WITH THE REQUIREMENTS OF THE BANKRUPTCY RULES

By this Motion, the Debtor is requesting that the Court schedule a final hearing on this Motion as soon as possible in accordance with the requirements of the Federal Rules of Bankruptcy Procedure. Rule 4001 of the Federal Rules of Bankruptcy Procedure provides that the Court may commence a final hearing on this Motion no earlier than fifteen (15) days after service of the Motion. The Debtor needs to obtain as promptly as possible approval of the permanent use of the cash collateral in order to ensure the Debtor can maintain the going concern value of its business with as little disruption as possible. A final hearing on this matter should be held as soon as possible after the expiration of the fifteen (15) day period provided for by Rule 4001 of the Federal Rules of Bankruptcy Procedure, in order to prevent closure and liquidation of the Debtor's business.

## VII.

## **NOTICE OF THE MOTION IS ADEQUATE**

Notice of this Motion will be provided, by telecopy, overnight courier or hand-delivery, to the following parties-in-interest: (a) the Office of the United States Trustee, (b) any secured creditors, (c) the Internal Revenue Service, (d) the twenty (20) largest unsecured creditors of the Debtor (as identified in the lists filed pursuant to Bankruptcy Rule 1007(d)), and (d) all parties who have filed notices of appearances in these cases.  In light of the limited nature of the relief requested herein, the Debtor would submit that no further notice of the Motion should be required. Under the circumstances of this case this notice is fair and reasonable.

## VIII.

## **CONCLUSION**

Based upon the foregoing, the Debtor respectfully requests that this Court enter an order granting the relief prayed for herein.

Dated:  November 7, 2017

**WINTHROP COUCHOT**
**GOLUBOW HOLLANDER, LLP**

By:   /s/ Garrick A. Hollander
    Marc J. Winthrop
    Garrick A. Hollander
[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **DEBTOR'S EMERGENCY MOTION FOR ORDER: (1) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIEN; AND (2) SETTING FINAL HEARING ON MOTION; MEMORANDUM OF POINTS AND AUTHORITIES [DECLARATION OF AUGUST DEANGELO II IN SUPPORT THEREOF FILED CONCURRENTLY HEREWITH]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On November 07, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On November 07, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on November 07, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Attorney Service**
Honorable Mark S. Wallace
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building
411 West Fourth Street, Suite 6135/ Ctrm 6C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 07, 2017 | Stacy Ly | /s/ Stacy Ly |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

-14-

230803

NEF SERVICE LIST

- Michael J Hauser michael.hauser@usdoj.gov
- Kristen N Pate ggpbk@ggp.com
- Ronald M Tucker rtucker@simon.com,
- cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- Marc J Winthrop mwinthrop@wcghlaw.com, pj@wcghlaw.com;sly@wcghlaw.com

230803