MARC J. WINTHROP – State Bar No. 63218
mwinthrop@wcghlaw.com
GARRICK A. HOLLANDER – State Bar No. 166316
ghollander@wcghlaw.com
**WINTHROP COUCHOT**
**GOLUBOW HOLLANDER, LLP**
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone:  (949) 720-4100
Facsimile:   (949) 720-4111

[Proposed] General Insolvency Counsel
for Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>STYLES FOR LESS, INC., a California corporation<br><br>              Debtor and<br>              Debtor-in-Possession | Case No. 8:17-bk-14396-MW<br><br>Chapter 11 Proceeding<br><br>**DECLARATION OF AUGUST DEANGELO II IN SUPPORT OF THE FOLLOWING MOTIONS:**<br><br>**1.  CASH COLLATERAL**<br>**2.  PAYROLL**<br>**3.  CASH MANAGEMENT**<br>**4.  CUSTOMER OBLIGATIONS**<br>**5.  BAR DATE**<br>**6.  LIMIT NOTICE**<br><br>DATE:     [To Be Set]<br>TIME:     [To Be Set]<br>CTRM:    Courtroom 6C<br>             411 West Fourth Street<br>             Santa Ana, CA 92701 |

I, August DeAngelo, hereby declare as follows:

1.    I am the Chief Financial Officer of Styles for Less, Inc., a California corporation, the debtor and debtor in possession (the "Debtor").  As Chief Financial Officer, I have been responsible for overseeing the day-to-day financial operations and financial performance of the Debtor.  Accordingly, I have personal knowledge of the facts stated herein, and if called upon to testify to such facts I could and would testify competently thereto.

2.    The Debtor is a California Corporation whose corporate offices are located at 1205 N. Miller Street, Anaheim, CA 92806. The Debtor, which was founded in 1992 by Michael P DeAngelo, operates approximately 93 retail women's clothing stores throughout California, Nevada, Arizona, Texas and Florida.  The Debtor's clothing stores offer the hottest trendy clothing, shoes, accessories and more at discounted prices, and employs over 613 people at the store and corporate level.

3.    Wells Fargo Bank asserts a claim against the Debtor's estate in the amount of approximately $915,000, which it asserts is secured against all of the assets of the Debtor's estate. I am not aware of any other secured creditors holding claims against cash collateral.

4.    The Debtor has experienced financial difficulties over the last couple of years. These difficulties are due to a combination of factors, including, increased industry discounting, online penetration, and shifts in consumer spending away from "fast fashion" and toward services and experiences.  These changes have created a highly competitive retail environment and accelerated adverse trends in shopping habits. The result has placed severe pressure on the Debtor's cash flow, depriving the Debtor of the ability to timely pay obligations to its Landlords and vendors, resulting in lawsuits and numerous threats from creditors.

5.    In order to address these issues, the Debtor has taken significant steps to restructure its business operations.  The Debtor has implemented, in part, the following cost cutting measures: (1) closure of 55 brick and mortar locations; (2) significant reduction in corporate employees, field employees and consultants (approximately 311 employees in total); (3) salary reductions and salary eliminations to senior management; (4) closing of a satellite corporate office; (5) complete review and reduction of all expenses; and (6) pending negotiations of all existing brick and mortar

MAINDOCS-#231296-v2-SFL_1st_Day_Declaration_Deangelo

1  leases.

2      6.      Unfortunately, in light of the significant amount of debt that has amassed, the

3  Debtor's cost reducing efforts alone are not sufficient to reorganize without bankruptcy protection.

4  Consequently, in order to preserve the remaining stores and overall operation, on November 6,

5  2017, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

6  **<u>Cash Collateral</u>**

7      7.      The Debtor has prepared a cash flow budget ("Budget") reflecting a projection of

8  the Debtor's financial performance in this case.  A true and correct copy of the Budget is attached

9  hereto as **Exhibit "1"** and incorporated herein by this reference.

10     8.      I have reviewed the Budget and the business assumptions underlying the operations

11  projected in the Budget, which are consistent with the Debtor's historical experience, as adjusted

12  to take into account recent or projected events (*e.g.*, the recent cost cutting measures made by the

13  Debtor).  I believe that the Budget represents the Debtor's best estimate of its cash flow

14  projections, and that the Budget and assumptions thereto are reasonable.

15     9.      The Budget indicates that the Debtor will operate on a cash flow positive basis

16  during the budgeted period, and that its assets will increase in value during such period.

17  Accordingly, I believe that the Budget establishes that the proposed replacement liens being

18  granted to the Secured Creditors will adequately protect the Secured Creditors' alleged interests.

19     10.     Even a temporary cessation of the Debtor's ability to operate its business, caused

20  by any lack of access to any cash collateral, will result in a substantial diminution of the Secured

21  Creditors' collateral, as customers will turn to competitors of the Debtor's for their retail needs,

22  resulting in a liquidation of the Debtor's business.  In contrast, as shown in the Budget, Debtor's

23  ongoing operation will preserve the value of the Secured Creditors' interests in any cash

24  collateral, thus providing adequate protection.

25     11.     In this case, the Debtor needs immediate use of cash collateral in order to meet the

26  daily costs and expenses of operating its business in order to preserve the value of its assets.  Use

27  of cash collateral is critical to maintaining the Debtor's operation and to maximizing the return for

28  the Debtor's creditors.

**Payroll**

12.     The Debtors seek court authority to pay its pre-petition wage related obligations and honor its employee related pre-petition benefits.  These obligations include prepetition payroll, wages, salaries, federal, state and local payroll taxes, deductions and withholdings, payroll deductions relating to various benefits, reimbursement of business expenses; and miscellaneous other claims asserted by current employees (including, without limitation, worker's compensation, medical, dental, life insurance, and disability insurance) (collectively, the "Prepetition Compensation").  These benefits include vacation pay, sick leave, holiday pay, jury duty pay, and other paid leave ("Benefits").

13.     The payroll for the employees is paid in arrears on a bi-weekly basis.  The next payroll is due and payable on November 16, 2017 for employee services rendered for the pay period October 29, 2017 through November 11, 2017, and thus represents pre-petition claims for the amounts accrued prior to the November 6, 2017 petition date ("Petition Date").  To meet this obligation, payroll needs to be funded as soon as possible.  In addition, the payroll for the pay period October 15, 2017 to October 28, 2017 was paid out on November 2, 2017 and there may be checks for these payments outstanding as of the Petition Date.  Attached hereto as **Exhibit "2"** is a list of the Debtor's employees and the monthly payroll amount for each.

14.     The pre-petition wages component of the Prepetition Compensation is comprised of the pre-Petition Date portion of the payroll due and payable on November 16, 2017 for the period October 29, 2017 through November 11, 2017, plus any checks outstanding as of the Petition Date from the payroll for the period October 15, 2017 to October 28, 2017, which was paid out on November 2, 2017.  The Debtor estimates that the total amount for checks outstanding as of the Petition Date from the payroll for the period October 15, 2017 to October 28, 2017 equals approximately $85,000 to $90,000.  The Prepetition Compensation includes compensation to the Debtor's insiders, but no payments will be made to the Debtor's insiders until such time as the Debtor's post-petition compensation is authorized to be paid pursuant to the U.S. Trustee Guidelines.  Furthermore, the payroll checks paid pursuant to this motion will not exceed the $12,850 wage priority limit provided for in Section 507 of the Bankruptcy Code.

15.     The Debtor's business is dependent upon its labor.  If these employees are not paid, they will most likely cease working and seek employment elsewhere.  Any such disruption would have a devastating effect upon the Debtor's business and consequential value to the creditors.  In contrast, if the Debtor obtains the relief sought herein its business operation will continue in the ordinary course, customer needs will be met, and the overall value of the Debtor's business enterprise will be preserved for creditors.

**Cash Management**

16.     The Debtor utilizes a centralized collection and accounting system in order to minimize costs and maximize internal efficiencies.  This system is critical to the Debtor's operations.  The Debtor's cash management system consists of the following bank accounts at Wells Fargo Bank:  (i) Parent Account (xx-3409); (ii) Stores Account (xx-3425); (iii) Payroll Account (xx-3433); (iv) Merchant Account (xx-3441); and (v) General Operating Expense Account (xx-3417).  The Debtor also maintains a Stores Account with Bank of America for five stores where there is no Wells Fargo branch.

17.     All receipts generated from the Debtor's stores (includes online store), including cash and credit card receipts from credit card companies, and other electronic purchases, are deposited into the Stores Account at Wells Fargo, which is a zero balance account with no check writing capability, and the Stores Account at Bank of America.  The Debtor does not have the resources, the time, or the available cash to administer a closing of this account.  However, since the Wells Fargo account has no check writing ability, there is no concern or possibility of outstanding pre-petition checks clearing.  In the case of Bank of America, it is the Debtor's understanding that the account will be frozen for purposes of clearing checks.  All funds in the Stores Account are swept on a daily basis into the Parent Account, which too has no check writing capability.  Funds in the Parent Account are used on a daily basis to fund the following accounts: (i) the Payroll Account to fund payroll, payroll taxes, and payroll processing fees; (ii) the Merchant Account, from which checks are written to fund inventory purchases; and (iii) the Expense Account, from which checks are written to fund overhead, normal operating expenses and expense reimbursements.  All accounts are presently maintained at Wells Fargo.

18.    It is my understanding that the banks have already frozen all bank accounts other than the payroll account for purposes of disbursements to third parties, thereby rendering it impossible for creditors or other third parties to be paid from these accounts.

19.    The Debtor's ability to sustain its operations will be impacted severely if required to shut down all accounts and open new accounts.  First, the Debtor does not have sufficient time and resources to contact all of its customers to advise them of a new account number and explain the reason for the change.  Second, I believe that notification of the change could alarm customers about this proceeding, which could have a negative effect on collections.  Third, the Debtor cannot afford the delay in payments that would occur as a result of the delays expected from the customers' administration of this change.  Finally, the Debtor's ability to retain the Payroll Account will create administrative efficiencies and minimize the risk that payroll is not timely paid.

20.    In contrast, granting the relief requested in the cash management motion will facilitate the timely receipt of cash collections and sustenance of the Debtor's operations and allow the Debtor to timely pay its employees, while resulting in no prejudice to any party.

21.    I believe that if Wells Fargo is required to deposit securities to back the daily cash balances maintained at Wells Fargo, Wells Fargo will charge to the Debtor substantial monthly fees. I believe that bearing this expense is unnecessary given the undisputable financial strength of Wells Fargo

22.    The proposed retention and limited use of the Debtor's pre-petition bank accounts is integral to the Debtor's daily operations.  Therefore, it is critical that the Debtor obtain emergency authorization to retain post-petition the Stores Account and Parent Account referenced and described above for the limited purpose of collecting the Debtor's receivables for transfer to the Debtor's post-petition debtor-in-possession accounts.

**Customer Obligations**

23.    The Debtor's stores offer to their customers the option of purchasing gift cards as gifts or for future use at their stores.  Further, the Debtor has issued credits to customers for returns.  The Debtor estimates that the total outstanding merchandise credits and gift cards purchased and not used as of the Petition Date is approximately $365,000.  Based on the historical average redemption rate, the Debtor estimates that the Debtor will need to honor approximately $3,000 a month in customer obligations.

24.    Should the Debtor be forced to cease honoring these customer obligations, the Debtor's customers will likely not return to the stores.  Indeed, failure to honor these obligations would undoubtedly engender negative publicity which would damage sales and the Debtor's efforts to repay creditors.  Consequently, all of these customer obligations are obligations to customers that must be fulfilled in order to preserve customer confidence and support, and thus are an important part of the Debtor's efforts to reorganize.  Any disruption in the Debtor's ability to honor these customer obligations may result in a loss of business to the stores, and a resulting loss of income to the Debtor.

**Bar Date**

25.    In order for the Debtor to develop a plan of reorganization to successfully emerge from bankruptcy, the Debtor must quantify the total amount of claims pending against the estate. A true and correct copy of the notice of bar date is attached as **Exhibit "3."**

26.    The Debtor must assess the extent of claims, particularly Section 503(b)(9) administrative claims against it and its estate from the outset of this bankruptcy proceeding to finalize and implement the Plan efficiently and effectively.  Delay in the finality of claims against the Debtor and its estate is likely to cause unnecessary uncertainty to the Debtor and impede or postpone the Debtor's evaluation and thus consummation of its reorganization efforts and the payment to the Debtor's creditors. Accordingly, emergency relief is both necessary and appropriate.

27.    I believe that, under these circumstances, giving forty-five (45) days notice of the Bar Date is reasonable and will provide time sufficient for the Debtor's creditors, including Section 503(b)(9) administrative expense claimants, to file proofs of claim.

**Limit Notice**

28.     The Debtor has more than 300 creditors in its case.  Some of the motions and applications that may be filed in the Debtor's case will involve matters that ordinarily fall within the parameters of notices required to be given to all creditors in the Debtor's case, but which will not affect directly, or impact the interests of, a majority of creditors.  The Debtor contends that providing notice to all such parties would be overly burdensome and costly to the estate.

29.     I believe that limiting notice to the U.S. Trustee, the secured and twenty largest unsecured creditors and investors, and to all parties who request special notice in the Debtor's Chapter 11 case, would provide adequate and proper notice to affected creditors and to other interested parties.  Additionally, the Debtor will provide notice to any party whose interest is impacted directly by a particular action or proceeding filed by the Debtor.

30.     Notwithstanding the Debtor's proposed procedures for limiting of notice in the Debtor's case, the Debtor will provide to all creditors notice of the following matters:

        a.     the time fixed for filing objections to, and the hearing to consider approval of, a disclosure statement;

        b.     the time fixed for filing objections to, and the hearing to consider confirmation of, a plan;

        c.     any time fixed for filing objections to, and any hearing to consider, a proposed sale of all or substantially all assets of the estate;

        d.     notices with respect to claims bar dates; and

        e.     any time fixed for filing objections to, and any hearing on, a dismissal of the cases.

31.     I believe that adoption of this proposed notice procedure is necessary and appropriate.  Such notice procedure will relieve the Debtor of the significant administrative burdens that would be associated with periodic "mass mailings," and would reduce substantially the Debtor's postage and reproduction costs, thereby facilitating significantly the economical and efficient administration of the Debtor's case.

1      32.    I believe that an order authorizing the limiting of service of those notices set forth

2    in Rules 2002 and 9007 of the Federal Rules of Bankruptcy Procedure will ultimately benefit the

3    creditors of the Debtor's estate by saving for the estate undue postage and photocopying expenses

4    and by eliminating the administrative burdens, which would be associated with the Debtor having

5    to serve all notices in the Debtor's case on the substantial number of creditors in its case.

6      I declare under penalty of perjury that the foregoing is true and correct.

7      Executed this 6th day of November 2017, at Anaheim, California.

8

9                               August De Angelo II

# Exhibit 1

**Styles for Less**

**Monthly Cash Flow Projection**

| # of Weeks in Period ---------------> | 4 | 5 | |
|---|---|---|---|
| **Retail Calendar Month End** | **11.7-11.25** | **11.26-12.30** | |
| **Month** | **Nov-17** | **Dec-17** | **Total** |
| Store Count (incl Web) | 94 | **94** | |
| *Change in Store Count* | *0* | *0* | |
| Cash Receipts | | | |
| Cash Receipts (Store + Web) | 1,520,371 | 5,134,692 | 6,655,063 |
| Collection of Sales Tax | 125,431 | 423,612 | 549,043 |
| | **1,645,802** | **5,558,304** | **7,204,106** |
| Store Level Disbursements | | | |
| Inventory Purchases | 214,217 | 1,140,947 | 1,355,164 |
| Sales Tax | | 464,266 | 464,266 |
| Payroll | 375,000 | 805,115 | 1,180,115 |
| Payroll Taxes | 33,000 | 70,850 | 103,850 |
| Medical Insurance | 12,750 | 27,374 | 40,124 |
| Rent/CAM | | 687,289 | 687,289 |
| Maintenance | 12,453 | 12,453 | 24,905 |
| Insurance | 10,752 | 6,192 | 16,945 |
| Workers' Compensation Ins. | 62,844 | 17,091 | 79,935 |
| Business License | 2,764 | 2,764 | 5,528 |
| Telephone | 40,304 | 40,304 | 80,609 |
| Utiities | 87,904 | 87,904 | 175,809 |
| Supplies | 15,000 | 22,252 | 37,252 |
| Credit Card Chargebacks | 3,041 | 10,269 | 13,310 |
| Credit Card Professing Fees | 15,204 | 51,347 | 66,551 |
| Cash Over(Short) | 304 | 1,027 | 1,331 |
| Security / Music | 7,432 | 7,432 | 14,865 |
| Advertising | 25,000 | 39,939 | 64,939 |
| Merch Freight | 27,367 | 92,424 | 119,791 |
| Misc | | | - |
| | **945,336** | **3,587,240** | **4,532,577** |
| **Store Level Cash Flow** | **700,465** | **1,971,064** | **2,671,529** |
| Non-Store Level Disbursements | | | |
| Corporate Payroll | 225,000 | 426,358 | 651,358 |
| Payroll Taxes | 18,000 | 34,109 | 52,109 |
| ADP Processing | 6,573 | 13,147 | 19,720 |
| Medical Insurance | 19,125 | 36,240 | 55,365 |
| Distribution Center Services/Temp Agencies | 53,213 | 179,714 | 232,927 |
| Office Rent | | 39,237 | 39,237 |
| Office CAM | | 13,510 | 13,510 |

| Retail Calendar Month End | | 11.7-11.25 | 11.26-12.30 | |
|---|---|---|---|---|
| Month | | Nov-17 | Dec-17 | Total |
| Postage/Mail | | 1,250 | 1,250 | 2,500 |
| Workers' Compensation Ins. | | 5,400 | 5,116 | 10,516 |
| Recruiting Services (ICMS) | | 6,264 | 6,264 | 12,528 |
| Consulting Services | | 15,949 | 15,949 | 31,899 |
| Bank Fees / Finance Charges | | 16,000 | 16,000 | 32,000 |
| Computer Support/Maintanence | | 41,443 | 41,443 | 82,886 |
| Office Telephone | | 13,147 | 13,147 | 26,294 |
| Utilities | | 6,291 | 6,291 | 12,582 |
| Supplies | | 18,000 | 28,495 | 46,495 |
| Office Travel (incl Gas & M&E) | | 18,000 | 23,000 | 41,000 |
| Misc | | 1,000 | 1,000 | 2,000 |
| | | **464,655** | **900,271** | **1,364,926** |
| | **Operating Cash Flows** | **235,810** | **1,070,792** | **1,306,602** |
| Restructuring Disbursements | | | | |
| Debtor's Counsel | | | 20,000 | 20,000 |
| Debtor's Financial Advisor | | | 15,000 | 15,000 |
| | | | 35,000 | 35,000 |
| **Net Cash Flow** | | 235,810 | 1,035,792 | 1,271,602 |
| Beginning Cash | | 67,054 | 302,864 | 67,054 |
| **Ending Cash** | | **302,864** | **1,338,656** | **1,338,656** |
| Collateral Package | | | | |
| Cash | | 302,864 | 1,338,656 | |
| Inventory @ Cost | | 2,260,234 | 2,511,632 | |
| **Total Collateral Package** | | **2,563,098** | **3,850,288** | |
| Wells Fargo Loan Balance | | 914,000 | 914,000 | |
| Equity Cushion | | 1,649,098 | 2,936,288 | |
| % | | *180%* | *321%* | |

# Exhibit 2

**For Pay Period 10/29/17 thru 11/25/17 (1 month)**

| CO | NAME | JOB | Pay rate | 80 hrs projected |
|---|---|---|---|---|
| KMK | Deangelo, Mike | CHAIRMAN OF BOARD | $0.00 | $0.00 |
| KMK | Womack, Gina | OTHER | $0.00 | $0.00 |
| KMK | Portillo, Alexis Elena | HR Generalist | $10.50 | $525.00 |
| WHS | Mayorga, Emma | Warehouse | $10.50 | $840.00 |
| WHS | Mondragon, Analilia | Warehouse | $10.50 | $840.00 |
| WHS | Bravo, George | Warehouse | $11.50 | $1,840.00 |
| KMK | Ivy, Britani Marie | HR ADM | $14.00 | $2,240.00 |
| KMK | Bautista-Garcia, Anahi | PLANNING/ALLOCATION | $13.26 | $2,121.60 |
| KMK | Serna, Magdalena | VISUAL | $15.00 | $2,400.00 |
| KMK | True, Melissa | OPERATIONS ASST | $15.75 | $2,520.00 |
| KMK | Hickman, Natasha | MARKETING CLERICAL | $16.55 | $2,648.00 |
| WHS | Ruelas, Angelica | Warehouse | $17.00 | $2,720.00 |
| WHS | Orduna, Pedro | Warehouse | $17.50 | $2,800.00 |
| KMK | Hagan, Evelyn | BUYER CLERICAL | $18.60 | $2,976.00 |
| KMK | Cengiz, Jasmine | ASSISTANT BUYER | $18.67 | $2,987.20 |
| KMK | Tran, Jimmy Hai | Finance/Accounting | $19.00 | $3,040.00 |
| KMK | Shilling, Elizabeth | IT SUPPORT | $19.75 | $3,160.00 |
| KMK | Griego, Yvette Lynda | OFFICE COORDINATOR | $22.00 | $3,520.00 |
| KMK | Fonseca, Jacqueline | Associate Buyer | $1,826.93 | $3,653.86 |
| KMK | Gutierrez, Magali | Associate Buyer | $1,826.93 | $3,653.86 |
| KMK | Navarro, Yvon | DISTRIBUTION ASST MGR | $1,830.77 | $3,661.54 |
| KMK | Tolentino, Rolando | FINANCE/ACCOUNTING | $1,884.62 | $3,769.24 |
| KMK | Ballan, Pamela P | Finance/Accounting | $1,923.08 | $3,846.16 |
| KMK | Gupit, Carmela | PLANNING/ALLOCATION | $1,923.08 | $3,846.16 |
| KMK | Garcia, Jenelle | DISTRICT MANAGER | $1,961.54 | $3,923.08 |
| KMK | Najarro, Esther | VISUAL SUPV | $1,961.54 | $3,923.08 |
| KMK | Preciado, Rosio | District Manager | $2,076.93 | $4,153.86 |
| KMK | Salazar, Margaret | OPERATIONS SUPV | $2,173.08 | $4,346.16 |
| KMK | Ingram, Kim | DISTRICT MANAGER | $2,307.69 | $4,615.38 |
| KMK | Zepeda, Patricia | HUMAN RESOURCES SUPERVISOR | $2,307.70 | $4,615.40 |
| KMK | Chauvin, Edward | IT SUPPORT | $2,484.62 | $4,969.24 |
| KMK | Block, Nicole B | DISTRICT MANAGER | $2,500.00 | $5,000.00 |
| KMK | Saltal, Christine | DISTRICT MANAGER | $2,661.54 | $5,323.08 |
| KMK | Hios, Georgia | BUYER | $2,692.31 | $5,384.62 |
| KMK | Rojas, Jan R. | BUYER | $2,730.77 | $5,461.54 |
| KMK | Clausen, Shelly | ALLOCATION MANAGER | $2,801.92 | $5,603.84 |
| KMK | Woolbright, Barbara | DISTRICT MANAGER | $2,865.39 | $5,730.78 |
| KMK | Soriano, Ignacio Nicholas | DISTRICT MANAGER | $2,884.62 | $5,769.24 |
| KMK | Cotton, Christina | DISTRICT MANAGER | $2,961.54 | $5,923.08 |
| KMK | Seeney, Gina | DISTRICT MANAGER | $3,173.08 | $6,346.16 |
| KMK | Harrison-Mullaly, Marizel | DISTRICT MANAGER | $3,230.77 | $6,461.54 |
| KMK | Hartman, Carrie | FAC MAINTENANCE MGR | $3,365.38 | $6,730.76 |
| KMK | Siroonian, Stacia Marie | Finance/Accounting | $3,538.47 | $7,076.94 |
| KMK | Ruiz, Melanie Lisa | BUYER | $3,769.24 | $7,538.48 |
| KMK | Williams, Michael | IT SUPPORT | $3,826.92 | $7,653.84 |
| KMK | Storm, Lance | DIR LOSS PREVENTION | $4,082.31 | $8,164.62 |
| KMK | Blanchette, Larry | DIRECTOR DISTRIBUTION | $4,205.70 | $8,411.40 |
| KMK | Basurto Jr., Ricardo | CONSTRUCTION | $4,576.92 | $9,153.84 |
| KMK | Renteria, Norma E | DIRECTOR OF HUMAN RESOURCES | $4,615.39 | $9,230.78 |

| | | | | |
|---|---|---|---|---|
| KMK | Mahaffey, Dena Kristen | REGIONAL DIRECTOR OPERATIONS | $5,076.92 | $10,153.84 |
| KMK | Bailey, Kimberlee | DIVISIONAL MDSE MANAGER | $5,923.08 | $11,846.16 |
| KMK | McMillan, Laura | DIR PLANNING/ALLOCATION | $7,003.85 | $14,007.70 |
| KMK | Fernandes, Savio | Finance Director | $8,076.93 | $16,153.86 |
| KMK | De Angelo Jr., Mike Peter | VP MARKETING | $8,273.08 | $16,546.16 |
| KMK | Deangelo, Jason | VP BUSINESS SERVICES | $9,346.16 | $18,692.32 |
| KMK | Ulves, Jerri | VP MERCHANDISE | $10,842.31 | $21,684.62 |
| KMK | Deangelo, August Anthony | VP EXECUTIVE | $12,863.08 | $25,726.16 |
| KMK | Pereira, Douglas | PRESIDENT | $16,425.00 | $32,850.00 |

*Total Projected* **$378,780.18**

# Exhibit 3

MARC J. WINTHROP -- State Bar No. 63218
mwinthrop@wcghlaw.com
GARRICK A. HOLLANDER -- State Bar No. 166316
ghollander@wghlaw.com
**WINTHROP COUCHOT**
**GOLUBOW HOLLANDER, LLP**
660 Newport Center Drive, Ste 400
Newport Beach, CA 92660
Telephone:  (949) 720-4100
Facsimile:   (949) 720-4111

[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>STYLES FOR LESS, INC., a California corporation,<br><br>                    Debtor and<br>                    Debtor-in-Possession. | Case No. 8:17-bk-14396-MW<br><br>Chapter 11 Proceeding<br><br>**NOTICE OF DEADLINE FOR FILING PROOFS OF CLAIM**<br>**[_____]** |

**TO ALL KNOWN CREDITORS AND PARTIES-IN-INTEREST OF THE ESTATE OF THE DEBTOR AND DEBTOR-IN-POSSESSION:**

     The Bankruptcy Court has set a deadline of _____ as the last date for all creditors of the above-referenced Debtor described below to file proofs of claim against the Debtor's estate ("Bar Date"):

     A)     Creditors holding claims against the Debtor, which claims have not been listed in the Debtor's respective schedules of liabilities or any amended schedules of liabilities ("Schedules");

     B)     Creditors holding claims against the Debtor, which claims have been listed in the Schedules as disputed, contingent or unliquidated;

     C)     Creditors holding claims against the Debtor who disagree with the amount listed for such claims in the Schedules;

     D)     Creditors whose claims have been listed in the Schedules as unsecured but who believe that their claims are secured;

     E)     Creditors whose claims have been listed in the Schedules as secured or partially secured but who believe that they hold an unsecured deficiency claim;

F)      Creditors whose claims have been listed in the Schedules as secured but who believe that all or a portion of their claims are unsecured;

G)      Creditors whose claims have been listed in the Schedules as general unsecured claims but who believe that their claims are entitled to priority or administrative status under the Bankruptcy Code; and

H)      Creditors holding Section 503(b)(9) administrative expense claims against the Debtor.

The exceptions to this Bar Date are:  (1) claims arising from the rejection of executory contracts or unexpired leases; (2) claims of "governmental units," as such term is defined in Section 101(27) of the Bankruptcy Code; and (3) claims arising as the result of transfer avoidance pursuant to Chapter 5 of the Bankruptcy Code.

For claims arising from rejection of executory contracts or unexpired leases pursuant to 11 U.S.C. § 365, the last day for filing such claims is the later of:  (i) the Bar Date; or (ii) thirty (30) days after the service of the date of entry of an order authorizing the rejection of such contract or lease or after any automatic rejection of such contract or lease.

For claims of "governmental units," as that term is defined in 11 U.S.C. §101(27), the last day for filing such claims is the later of (i) the Bar Date; (ii) the date which is one hundred eighty (180) days after the Petition Date (November 6, 2017), or (iii) as otherwise provided in Rule 3002(c)(1) of the Federal Rules of Bankruptcy Procedure ("Federal Bankruptcy Rules")

For claims arising from the avoidance of a transfer under chapter 5 of the Bankruptcy Code, the last day for filing such claims is the later of the following dates:  (i) the Bar Date; or (ii) thirty (30) days after the entry of judgment avoiding the transfer.

If you are listed on the Debtor's Schedules of Assets and Liabilities ("Schedules") and your claim is not scheduled as disputed, contingent, unliquidated or unknown, your claim is deemed filed in the amount set forth in the Schedules, and the filing of a proof of claim is unnecessary if you agree that the amount scheduled is correct and that the category in which your claim is scheduled (secured, unsecured, priority stock, etc.) is correct. *See* 11 U.S.C. §1111(a).

If your claim is not listed on the Schedules or is scheduled as disputed, contingent, unliquidated or unknown, or you disagree with the amount or description scheduled for your claim, you must file a proof of claim.

**Failure of a creditor to file timely a proof of claim on or before the deadline may result in disallowance of the claim or subordination under the terms of a plan of reorganization without further notice or hearing.  11 U.S.C. §502(b)(9).  Creditors may desire to consult an attorney to protect their rights.**

**IF YOU AGREE THAT THE DEBTOR'S SCHEDULES REFLECT ACCURATELY THE AMOUNT OWED TO YOU BY THE DEBTOR AND IF YOUR CLAIM IS NOT LISTED AS DISPUTED, UNLIQUIDATED, CONTINGENT OR UNKNOWN, YOU NEED NOT FILE A PROOF OF CLAIM.**

To assist you in ascertaining the status of your claim, the Debtor's Schedules are on file with the Clerk of the Bankruptcy Court and are available for inspection between the hours of 9:00 A.M. and 4:00 P.M., Monday through Friday. ***The Court is located at 411 West Fourth Street, Santa Ana, CA 92701.***

**PLEASE TAKE FURTHER NOTICE** that, if your claim is based upon any writing, you must attach copies of any and all such writings to the proof of claim or provide an adequate explanation of your inability to do so.  Failure to do so will render your claim incomplete and invalid and subject to objection and disallowance.

**A PROOF OF CLAIM FORM IS ATTACHED FOR YOUR USE.**

**BY ORDER OF THE COURT**.

DATED:                                        **WINTHROP COUCHOT**
                                              **GOLUBOW HOLLANDER, LLP**

                                              By:*/s/*_____
                                                   Marc J. Winthrop
                                                   Garrick A. Hollander
                                              General Insolvency Counsel for
                                              Debtor and Debtor-in-Possession

Exhibit 3, Page 16

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:  660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **Declaration of August DeAngelo II in Support of the Following Motions: 1. Cash Collateral; 2. Payroll; 3. Cash Management; 4. Customer Obligations; 5. Bar Date; 6. Limit Notice** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On November 07, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On November 07, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on November 07, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Attorney Service**
Honorable Mark S. Wallace
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building
411 West Fourth Street, Suite 6135/ Ctrm 6C
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| November 07, 2017 | Stacy Ly | /s/ Stacy Ly |
| Date | Printed Name | Signature |

MAINDOCS-#231296-v2-SFL_1st_Day_Declaration_Deangelo

NEF SERVICE LIST

- Michael J Hauser michael.hauser@usdoj.gov
- Kristen N Pate ggpbk@ggp.com
- Ronald M Tucker rtucker@simon.com,
- cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- Marc J Winthrop mwinthrop@wcghlaw.com, pj@wcghlaw.com;sly@wcghlaw.com

MAINDOCS-#231296-v2-SFL_1st_Day_Declaration_Deangelo